Argued on motion to dismiss and applications September 29, application to amend allowed, motion to dismiss denied and application for diminution of the record allowed October 27, argued September 29, modified December 5, 1922, rehearing denied January 23, 1923.

## NORTHWESTERN CLEARANCE COMPANY *v.* JENNINGS ET AL.

### (209 Pac. 875; 210 Pac. 884.)

### ON MOTION TO DISMISS.

**Appeal and Error—Return of Service on Appeal Amendable to Show Service by Mail, Where Parties Reside in Different Places.**

1. Return of service of notice of appeal may be amended to state the facts and conform to Section 540, Or. L., providing for service by mail, by showing that the person for whom and person on whom service is made reside in different places.

**Appeal and Error—Attorney for Both Appellants and Respondents Who All were Defendants on Trial may Accept Service of Notice of Appeal for Respondents.**

2. After appeal from Circuit Court decree by certain defendants whereby other defendants were made respondents and all were represented by the same attorney of record, he has authority to accept service of notice of appeal for such respondents.

**Appeal and Error—Certified Transcript Concerning Acceptance of Service of Notice of Appeal by Attorneys for Several Respondents Presumed Correct.**

3. Where the record of acceptance of service of notice of appeal is signed by several attorneys for respondents, the court will,

against the contention of these respondents that the transcript is erroneous, consider the certified transcript correct.

### Appeal and Error—Attorney for Appellant, Where not a Party, may Effect Service by Personally Mailing Notice of Appeal to Respondent.

4. Under Section 539, Or. L., directing that deposit in the post-office of notice of appeal, when made by mail, may be made by any other person than the party himself, attorney for appellant, where not a party, may effect service by mailing the notice.

## ON THE MERITS.

### Escheat—Rule as to Conclusiveness of Judgment Stated.

5. The general rule as to the effect of a judgment in escheat proceedings is that it is conclusive against those with notice either actual or constructive, but not against those who are not parties or privies thereto, and ordinarily one who is really entitled as an heir can recover from the state property which has escheated.

### Judgment—Jurisdiction Only can be Considered in Collateral Attack.

6. In a collateral attack on a judgment, only the existence of jurisdiction in the trial court can be considered.

### Escheat—Whether Decedent Died Intestate and Without Heirs is Main Issue in Escheat Proceedings.

7. Under the statutes relating to escheat, Section 10145 et seq., Or. L. (L. O. L., § 7363 et seq.), the main questions in escheat proceedings were whether the property owner died intestate and without heirs, and where the information is traversed the claim of the state is barred until the determination of such issues.

### Escheat—Is a Special Proceeding With General Jurisdiction in Circuit Court Rendering It a Court of Limited Jurisdiction Thereto.

8. Under escheat statutes, Section 10145 et seq., Or. L. (L. O. L., § 7363 et seq.), the escheat action is a special proceeding in which general power over the subject matter is vested in the Circuit Court rendering it, as to such proceeding, a court of limited or special jurisdiction.

### Escheat—Judgment Barring Heirs not Parties Held not Within the Issues and not Binding on Heirs not Represented.

9. Where escheat proceedings, under Section 10145 et seq., Or. L. (L. O. L., § 7363 et seq.), was in the name of the state against administratrix of the estate, heirs at law, and all persons interested, and an order by publication required interested persons to show cause why title should not vest in the state, and no summons was served on anyone except the administratrix, and the jury found against the state and for certain named defendants and claimants, with no finding that such claimants were all of the heirs, a judg-

7. Presumptions and burden of proof in proceedings to establish escheat, see note in **Ann. Cas.** 1913E, 383.

ment finding that there were no other heirs than those named in the verdict and judgment was not within the issues, or necessary to determination, and did not preclude subsequent action by heirs not parties or represented.

#### Escheat—Is not Strictly a Proceeding in Rem.

10. An escheat proceeding under statutes, Section 10145 et seq., Or. L. (L. O. L., § 7363 et seq.), which do not direct seizure of the property and which apply to personalty as well as to realty, is not strictly a proceeding *in rem*.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

APPLICATION TO AMEND RETURN ALLOWED. MOTION TO DISMISS DENIED. APPLICATION FOR DIMINUTION OF RECORD ALLOWED.

For appellants there was a brief over the names of *Mr. L. P. Hewitt, Mr. E. M. Clark, Mr. Hal R. Clark* and *Mr. C. M. Idleman,* with an oral argument by *Mr. Hewitt.*

For respondents there was a brief over the names of *Mr. James H. Ganoe, Mr. H. L. Ganoe, Mr. L. G. English, Mr. Samuel Griffin* and *Mr. Junius V. Ohmart,* with oral arguments by *Mr. James H. Ganoe* and *Mr. H. L. Ganoe.*

BEAN, J.—1. There are numerous defendants in this suit. Fifteen defendants, parties to the judgment, appeal. A notice of appeal was filed with proof of service indorsed thereon, consisting of two affidavits of mailing copies of the notice of appeal to certain of the adverse parties to the judgment, and two acceptances of service of the notice of appeal signed by several of the attorneys for certain of the parties. Upon a motion to dismiss the appeal for the reason among other things that the

notice of appeal did not have indorsed thereon proof of service as required by law the appellants by their counsel apply for leave to amend the return of service of notice of appeal so as to conform to Section 540, Or. L., by showing that the person upon whom the service was made, and the persons for whom the service was made, resided in different places between which there is a communication by mail. The application to amend comes within the rule found in *Mitchell* v. *Coach,* 83 Or. 45, 47 (153 Pac. 478, 162 Pac. 1058), following the rule declared in *Barbre* v. *Goodale,* 28 Or. 465, 468 (38 Pac. 67, 43 Pac. 378). The appellants will therefore be allowed ten days to amend the return of service of the notice of appeal.

2. Further objection to the service of notice of appeal is made, for the reason that E. M. Clark, one of the attorneys for certain of the defendants and respondents in the trial court, accepted service of notice of appeal for such respondents and was also attorney for other defendants who are appellants, and is one of the attorneys for the appellants herein.

The suit appears to involve the rights or claims of various heirs of H. D. Winters, deceased. Some of these defendants, claiming to be heirs, employed the same attorney in the Circuit Court. While it might be possible for the rights of such heirs to be affected and their share in the estate diminished by a decree declaring all of such claimants to be heirs of the deceased, yet if such persons desire to pool their issues and thereby reduce expenses of the suit by employing the same attorney to represent various persons claiming to be heirs, it is perfectly right that they should do so; and we see no objection to the

same attorney representing several defendants claiming to be heirs of the same decedent in the absence of any objection on the part of any of the heirs. A decree was rendered in the Circuit Court recognizing a part of the defendants represented by such attorney as the heirs of H. D. Winters, deceased, and denying the heirship of other defendants represented by the same attorney. Therefore the attorney of record for the successful respondents was authorized to accept service for such respondents. The objection to such acceptance of service of notice of appeal is untenable.

3. The acceptance of service of the notice of appeal upon the plaintiff and several defendants appears to be signed by five attorneys, part of whom were attorneys for plaintiff, and a part of them were attorneys for different defendants without designating the respondents for whom the acceptance was made by each of the attorneys. This it seems was in order to abbreviate the clerical work of listing the names of respondents whom each attorney represented, leaving that pleasure for this court. An affidavit is filed in this court naming several of the attorneys and the parties for whom they appeared and making reference to "the several appearances of the parties and the record of this cause in the Circuit Court for Multnomah County." Reference to the transcript of the testimony discloses that at the time of the taking of the testimony the defendants appeared by several attorneys named "of counsel for certain of the defendants as noted in the pleadings in said cause." The pleadings in the cause have not been filed in this court, so as to enable the court to ascertain for which respondents the different attorneys appeared. It is not presumed

that the attorneys for plaintiff and respondent were also attorneys for defendants and respondents for whom the acceptance of service of notice of appeal was signed. As to the record of the acceptance of service of notice of appeal by several of the attorneys for defendants and respondents, contained in the transcript of record, which is claimed by the above-named respondents to be erroneous, it is a well-established rule that this court will consider the certified transcript of the record of the proceedings in the trial court as correct. If there are any errors in such record in the Circuit Court the corrections should be made in that court. We understand, however, that the objection made goes to the acceptance of service above referred to by the attorney of record, E. M. Clark.

4. It is objected that: ''Samuel Griffin was the only attorney of record for Respondents Julia Frances Mathews, Mary J. Kinchloe and Mary M. Brown and said attorney was served with Notice of Appeal by L. P. Hewitt, attorney for appellant who was not a person authorized by law to make such service.''

Section 539, Or. L., directs that service of notice or deposit thereof in the postoffice, when served by mail, may be made by any person other than the party himself. Counsel for the motion cite and rely upon the cases of *Williams* v. *Schmidt,* 14 Or. 470, 471 (13 Pac. 305), and *Muckle* v. *Columbia County,* 56 Or. 146 (108 Pac. 120). In the latter cases the service of notice of appeal was made by a party to the action, and therefore defective: See *Schultz* v. *Walrad,* 92 Or. 315 (179 Pac. 904, 991). L. P. Hewitt was not a party to the present suit and was qualified to make the deposit of the notice of appeal in the postoffice. The objection is not well taken.

The motion to dismiss will be denied subject to renewal upon further specific objections within five days after the amended return of service of notice of appeal is filed herein.

Defendants and respondents, Pauline A. Jennings, Polly Z. Forbes, Elias Duncan, Thomas J. Winters, H. L. Ganoe and F. W. Ganoe, request a rule upon the clerk of the Circuit Court to send to this court a photographic copy of the record of the genealogy of H. D. Winters, deceased, as attached to the pleadings of F. W. Ganoe and used in the trial of this case in the lower court; and also the judgment-roll in the case of *State of Oregon* v. *Agnes Butts, as Administratrix of the Estate of Henry D. Winters, Deceased,* and especially the pleadings in said case.

The respondents will be allowed to file the original pleadings in this case with the photographic copy named attached, and also the judgment-roll in the case of *State of Oregon* v. *Agnes Butts, as Administratrix,* or certified copies of such portions of the judgment-roll as the above-named respondents may desire.

BURNETT, C. J., and BROWN and HARRIS, JJ., concur.

## ON THE MERITS.

This is a suit for the partition and sale of certain real property. From a decree in favor of plaintiff and several defendants and respondents, and denying the right of William Winters and other defendants and appellants, an appeal was taken to this court.

The facts of the case are substantially as follows: Henry D. Winters died intestate at Portland, Oregon, June 20, 1911, leaving an estate in real and personal

property of which the property described in plaintiff's complaint is a part. On March 15, 1913, the State of Oregon, by the district attorney, under Section 10149, Or. L., instituted a proceeding to have the property declared escheated to the State of Oregon. The information described the property of the estate of Henry D. Winters and stated that he died intestate without heirs, and that the properties had escheated and vested in the State of Oregon. The proceeding was in the name of the *State of Oregon, Plaintiff,* v. *Agnes Butts, as Administratrix of the Estate of H. D. Winters, Deceased,* all heirs at law of decedent (if any there be) and all persons interested in the estate, defendants. The court issued an order to show cause requiring all heirs at law of H. D. Winters, deceased, and all persons interested in the estate to appear and show cause why the estate of H. D. Winters should not escheat to the State of Oregon. Service of the order was made by publication. No summons was served by publication or otherwise upon anyone except Agnes Butts as administratrix of H. D. Winters, deceased.

Various groups of claimants appeared and filed answers traversing the information as to a lack of heirs of Henry D. Winters, deceased, each group claiming to be his heirs. Upon issues being joined a trial was had before the court and a jury. The jury rendered a verdict in favor of several groups of claimants, about 57 in number, to the effect that they were the heirs of Henry D. Winters, deceased. On June 18, 1914, judgment was entered upon the verdict to the effect that such heirs were the owners in fee simple of the property of the estate. After expressly excluding certain claimants who appeared in the escheat proceeding the judgment recited "that

there are no other heirs at law of Henry D. Winters, deceased," and entered judgment against all persons who claimed to be such heirs and against all other persons claiming or who may claim to be interested in the estate.

On May 10, 1918, plaintiff instituted this suit as successor in interest to Sarah Roberts, one of the heirs of H. D. Winters, deceased, making the other persons who were adjudged to be heirs of H. D. Winters in the escheat case and their successors in interest parties defendant and also several other parties making claim to some right or interest in the property.

It appears that Henry D. Winters, deceased, left no lineal descendants. Persons adjudged to be his heirs were first cousins and the heirs of first cousins since deceased. The appellants, who were not parties to the escheat proceeding, appeared in this suit and answered to the effect that Henry D. Winters, deceased, left as heirs at law William Winters and Ayres Hudspeth Ellsberry, who were first cousins of Henry D. Winters, and each upon the death of the deceased became the owner of a share of the estate; and that Ayres Hudspeth Ellsberry died January 6, 1918, leaving as his heirs at law the defendants and appellants, Mary Eliza Rose, William Henry Ellsberry, Obediah Benjamin Ellsberry, Mahulda Ann Fiscus and Thomas Jefferson Ellsberry, his children, and Dora Sanford, Rose Veatch, Melissa Dove, William Ellsberry, Leonard Ellsberry, Edward Ellsberry, Martha Ellsberry, Josie Ellsberry and Elsie Ditman, children of a deceased son. For convenience these last-named appellants will be referred to as the Ellsberry heirs.

All parties adjudged in the escheat proceeding to be heirs of Henry D. Winters, deceased, filed answers in this case setting up their respective interests in the property. Other persons than those mentioned filed answers, but have been eliminated from the case. The case is resolved to an adversary proceeding between first cousins who appeared in the escheat case, and were adjudged to be the heirs of Henry D. Winters, deceased, and parties claiming to be first cousins who did not appear in the escheat action and who claim for the first time in this case. Several of the main facts in the case were stipulated by counsel for the respective parties.

The trial court held in effect that the appellants, although legal heirs of Henry D. Winters, deceased, were precluded from making a claim and participating in his estate by reason of the judgment in the escheat action.

It is fairly shown by the record, and practically uncontroverted, that William Winters and Ayres Hudspeth Ellsberry were first cousins of Henry D. Winters, deceased, and were living at the date of his death, since which time Ayres Hudspeth Ellsberry died and the persons above named are his heirs at law.                MODIFIED.  REHEARING DENIED.

For appellants there was a brief over the names of *Mr. L. P. Hewitt, Mr. E. M. Clark, Mr. Hal R. Clark* and *Mr. C. M. Idleman,* with an oral argument by *Mr. Hewitt.*

For respondents there was a brief over the names of *Mr. James H. Ganoe, Mr. H. L. Ganoe, Mr. L. G. English, Mr. Samuel Griffin* and *Mr. Junius V. Oh-*

*mart*, with oral arguments by *Mr. James H. Ganoe* and *Mr. H. L. Ganoe.*

BEAN, J.—The main question for determination is whether the appellants as heirs of Henry D. Winters, deceased, are precluded from claiming their rights as such by the judgment in the escheat proceeding. The respondents maintain that the heirs of Henry D. Winters who did not appear in the escheat proceeding are barred from setting up any claim as heirs to property of the Winters' estate in this case, claiming that the judgment in that proceeding is *res adjudicata* as to such heirs.

The statute relating to escheat in force at the time of the death of Henry D. Winters, which as amended is now Section 10145 et seq., Or. L., as far as necessary to note, is in substance as follows:

Section 7363, L. O. L., provided that when any person shall die intestate without heirs, leaving any real, personal, or mixed property, interest or estate in this state the same shall escheat to and become the property of this state.

Section 7364, L. O. L., designated the "proceedings by the state to enforce right to escheated property."

Section 7366, L. O. L., provided that whenever the Governor is informed, or has reason to believe that any such property has escheated to the state he shall direct the district attorney of the judicial district in which such property may be, to file an information in behalf of the state and in the name of the state, in the Circuit Court setting forth "the description of the same, the name of the person last seised, the name of the occupant or the person in possession and claiming the same, if known, and the fact that such person last seised has died without heirs, leaving the property so described in the information

escheated and vested in the state." It further provided for a summons to be issued to the person or occupant in possession, for his appearance and answer to the information within the time allowed by law in civil actions, and the court must upon application of the district attorney make an order setting forth briefly the contents of the information and requiring all persons interested in the estate to appear and show cause, if any they have, within such time as the court may fix, not less than six weeks from the date thereof, why the title should not vest in this state, which order must be published for at least six weeks in a newspaper published in the county, if one be published therein, otherwise as the court may direct, "and jurisdiction for the purpose of declaring an escheat shall be vested exclusively in the Circuit Courts of the state, subject to appeal to the Supreme Court."

Section 7369, L. O. L., directed that all persons named in the information may appear and answer, and may traverse or deny the facts stated in the information, or the title of the state to the lands; and any person claiming an interest in such estate may appear and be made a defendant by motion for that purpose within the time allowed for answering as fixed in the published order; and if no person appears and answers within the time, then judgment must be rendered that the state be seised of the land and tenements or property in such information claimed; but if any person appears and denies the title set up by the state, or traverses any material facts set forth in the information, the issue of the fact must be tried, as issues of facts are tried in civil actions, with the aid of the jury, if requested by either party. If, upon such trial, the verdict of the jury, if there

is a jury, or the judgment of the court, if the case is tried by the court without a jury, be in favor of the state, judgment must be rendered that the state be seised thereof and recover costs of suit against the defendant.

Section 7370, L. O. L., after judgment being rendered escheating real property to the state, authorized the court to order the property sold by the sheriff at public auction, and upon the sale being confirmed the court may direct the sheriff in the name of the state to execute to the purchaser a conveyance of the property sold "and said conveyance shall vest in the purchaser or purchasers all the right and title of the state therein, and the right and title which said deceased person had therein at the time of his death"; and after paying the costs of the sale and proceeding the remainder of the proceeds of the sale shall be paid to the state treasurer.

Section 7374, L. O. L., provided that within ten years after judgment in such proceeding a person not a party or privy to such proceeding may file a petition in the proper Circuit Court showing his claim or right to the property escheated or the proceeds thereof. It directed that a copy of such petition must be served upon the district attorney, who must answer the same; and the court thereupon must try the issue as issues are tried in civil actions, with the aid of a jury, if requested by either party; and if it be determined that such person is entitled to the proceeds thereof, it must order the same to be delivered to him, subject to and charged with the costs and expenses of the state in connection therewith, together with expenses of administration, and all claims and demands of creditors of the deceased, which claims and demands shall be adjudicated by

the proper County Court. It further provided for the secretary of state to draw his warrant on the treasurer of the state for the payment of the same without interest or cost to the state.

5. The general rule as to the effect of a judgment in escheat proceedings is stated in 21 C. J., page 859, Section 32, thus:

"A judgment in escheat proceedings is conclusive evidence of the state's title against all persons having either actual or constructive notice of the proceedings, but not against persons who were not parties or privies thereto. The presumption of regularity otherwise arising from recitals in the judgment cannot prevail against record evidence of insufficiency, or indisputable evidence of basic falsity. Escheat proceedings based on the death of the owner of the property are, if such person is alive, entirely null and void."

In 10 R. C. L., page 617, Section 15, we read:

"There is no question but that an heir who is competent to hold title has the right to recover from the state property which has escheated. Obviously, if there is an heir, there can be no legal escheat and the state in such case acquires no title. * * In many jurisdictions the procedure by which escheated property may be recovered by heirs is prescribed by statute, and a time limit is imposed within which such action must be brought."

6. In a collateral attack on a judgment or decree, only the existence of jurisdiction in the trial court can be considered: *Huffman* v. *Huffman*, 47 Or. 610 (86 Pac. 593, 114 Am. St. Rep. 943).

7. It is clear from our statute that the main questions for determination in the escheat action were that Henry D. Winters, the owner of the property described in the information, died intestate and without heirs, leaving the property escheated and vested

in the state.   The respondents and others traversed that part of the information alleging that Henry D. Winters died without heirs and that the property escheated and vested in the state.   The effect of that traverse was to bar the claim of the state until the issue was determined by trial: 21 C. J., p. 857, § 22. It having been determined upon the trial that there were heirs of Henry D. Winters, deceased, and a judgment having been entered accordingly, that bar continued.

The verdict in the escheat action upon which the judgment in question is based reads thus:

"We, the jury duly impaneled and sworn in the above-entitled cause find for the following named defendants and claimants": Then follows the names of fifty-seven defendants.

There was no finding by the jury that the claimants named in the verdict were all of the heirs of Henry D. Winters, deceased.   Neither was that fact an essential issue in that proceeding.

15 R. C. L., page 972, Section 449, reads thus in part:

"While a judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact are not joined or embraced in the pleadings."

Mr. Bigelow says in his work on Estoppel (6 ed.), page 206:

"A judgment is conclusive only in respect of matters necessarily inconsistent with it.   Now, the fact of the ill performance of a contract is not inconsistent with a judgment upon the contract by the other party."   See also Id., p. 203, note 4.

8. The escheat action was a special proceeding in which general power over the subject matter was vested in the Circuit Court: *State* v. *McDonald,* 55 Or. 419, 428 (103 Pac. 512, 104 Pac. 967, 106 Pac. 444). When a court of general jurisdiction takes cognizance of a proceeding pursuant to statutory authority, and not in conformity to the principles of the common law such tribunal becomes a court of limited or special jurisdiction, and its proceedings in such a case are subject to all the incidents applicable to a court of that kind: *De Vall* v. *De Vall,* 57 Or. 128, 137 (109 Pac. 755, 110 Pac. 705).

9. The order published in the escheat proceeding under Section 7366, L. O. L., (Section 10149, Or. L.), only. required all persons interested in the estate to appear and show cause "why the title should not vest in this state." There was no attempt made to bring anyone into court in that case for any other purpose.

In *Sache* v. *Wallace,* 101 Minn. 169 (112 N. W. 386, 118 Am. St. Rep. 612, 11 Ann. Cas. 348, 11 L. R. A. (N. S.) 803), parts 1 and 3 of the opinion, the law is stated:

"When the court goes beyond and outside the issues made by the pleadings, and in the absence of one of the parties determines property rights against him which he has not submitted to it, the authority of the court is exceeded, even though it had jurisdiction of the general subject of the matters adjudicated. Such a departure cannot be held a mere irregularity. * *

"A judgment which goes beyond the relief demanded in the complaint is void."

It is stated in the brief of the learned counsel for respondents that the escheat action was a proceeding *quasi in rem.* The same effect of the judgment in

the escheat case is claimed, as though the proceeding were one strictly *in rem*.

In regard to the effects of judgment *in rem* it is stated in 15 R. C. L., page 642, Section 84, after discussing the question, thus:

"Logically there appears to be no reason why strangers in interest, not entitled to be heard, should be bound by the findings of fact in proceedings resulting in a judgment *in rem*. In any event the finding of the court as to a fact which is not essential to the determination of the question whether the judgment *in rem* ought to be pronounced cannot be considered conclusive on other parties, although it may be recited or contained in the judgment."

10. An escheat proceeding, while it has many of the characteristics of a proceeding *in rem,* is not strictly such a proceeding. The statute does not direct a seizure of the thing, which in some cases, has been held to support a judgment strictly *in rem*. It applies to personalty as well as realty. The institution of the proceeding creates no presumption that there is no one capable of taking the estate under the rules regulating the descent of estates of deceased persons; the presumption is to the contrary. The effect of the judgment, if rendered in favor of the state after all persons interested in the estate are notified of the pendency and purpose of the proceeding, is to destroy that presumption. After the property is sold under a valid judgment in favor of the state the claim of the person who might have taken it as heir, devisee or legatee is against the proceeds of the property which must be paid into the state treasury: Section 10157, Or. L.; *Hamilton* v. *Brown,* 161 U. S. 256, 269 (40 L. Ed. 691, 16 Sup. Ct. Rep. 585, see, also, Rose's U. S. Notes). In such case where it is established that there are heirs of the deceased

person and that the property did not escheat, it would
not appear that the statute providing for such special
proceeding contemplated that an heir of the deceased
person, who was a stranger to the proceeding and had
no notice thereof, would be in any more unfavorable
position than he would if it were adjudged that the
property had escheated.   Under the latter condition
such an heir not a party to the proceeding may assert
his right to the proceeds of the sale of the property
within ten years.   As an indication of the policy of
the law, by reference to Section 1309—6, Or. L., we
find that after a decree determining who are heirs
or distributees entitled to the property of any dece-
dent which may remain on hand at the close of admin-
istration shall be final, any defendant or claimant,
known or unknown, or his representatives, against
whom service of citation has been made by publica-
tion and who shall not have had actual knowledge of
the pendency of such proceedings prior to the entry
of a decree therein, may upon good cause shown and
upon such terms as may be proper, be allowed to
answer and set up his rights and to defend after
the decree and within three years from the entry
thereof.

In an escheat action it was held that after the
state had acknowledged one as heir at law and re-
leased its right to him the heir could not proceed in
the name of the state for his own benefit: *State* v.
*Engle,* 21 N. J. L. 347.   This rule was applied by
this court in the case of *State* v. *Butts,* 78 Or. 173
(151 Pac. 722)..

In *Morrison* v. *Holladay,* 27 Or. 175 (39 Pac. 1100),
at page 180 of the opinion, Mr. Chief Justice BEAN,
referring to the admission of a decree in evidence,
said:

"The fundamental rule on this subject undoubtedly is that the record of a judgment or decree *in personam* or *quasi in rem* can affect only parties and privies, * * All other persons are strangers, and the judgment is not binding upon them: Starkie on Evidence (10 ed.), 318; Black on Judgments, §§ 600, 794; 1 Herman on Estoppel, § 299; Freeman on Judgments, § 154; *Freeman* v. *Alderson,* 119 U. S. 185 (30 L. Ed. 372, 7 Sup. Ct. Rep. 165, see, also, Rose's U. S. Notes)."

In *Stokes* v. *Dawes,* 23 Fed. Cas., page 135, case number 13,477, the syllabus reads:

"An inquest of office by the attorney general for lands escheating to the government by reason of alienage, is evidence of title in all cases; but is not conclusive evidence against any person, who was not tenant at the time of the inquest, or party or privy thereto. Such person may prove that there are lawful heirs, not aliens *in esse.*"

The finding by the Circuit Court in the escheat action that there are no other heirs of Henry D. Winters, deceased, than those named in the verdict and judgment, was not within the issues in that case or necessary for a determination of the question whether the property in question had escheated.

No jurisdiction of the appellants who were not parties or privies in the escheat action was obtained by publication of summons under Chapter 248, General Laws of Oregon, 1911 (Section 10141, Or. L.), authorizing the making of unknown heirs of deceased persons and unknown persons parties defendant in suits and actions pertaining to real estate and providing for service on such "unknown heirs" by publication.

Generally a court has no jurisdiction to grant relief or determine matters beyond the issues and a judgment which attempts to go beyond the scope of the

issues is not only voidable but void as to such excessive relief: 15 C. J. 734; *Sache* v. *Wallace,* 101 Minn. 169, 172 (112 N. W. 386, 118 Am. St. Rep. 612, 11 Ann. Cas. 348, 11 L. R. A. (N. S.) 803); *Hutts* v. *Martin,* 134 Ind. 587, 592 (33 N. E. 676); *Fairchild* v. *Lynch,* 99 N. Y. 359, 368 (2 N. E. 20); *Unfried* v. *Heberer,* 63 Ind. 67, 72; *Reynolds* v. *Stockton,* 140 U. S. 254, 271 (35 L. Ed. 464, 11 Sup. St. Rep. 773, see, also, Rose's U. S. Notes).

A judgment of a court acting without jurisdiction or in excess of its jurisdiction is void and subject to collateral attack: 11 Cyc. 702; 23 Cyc. 681, 1074; *Wright* v. *Edwards,* 10 Or. 298, 302; *Hoover* v. *King,* 43 Or. 285 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790).

Moreover, the plaintiff's complaint, which shows the respondent's theory of the case, is directed against several parties who were not named in the verdict in the escheat case and also "all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real property," and seeks to quiet the title to the property involved. This indicates that the title was not adjudicated in the escheat action.

The question of whether the appellants, William Winters and the "Ellsberry heirs," were heirs of Henry D. Winters, deceased, not having been litigated in the escheat action, we hold that they are entitled to assert their rights to the property involved in the present suit.

The decree of the lower court will therefore be modified and the appellants will be declared to be entitled to their proportionate shares of the property of Henry D. Winters, deceased, or the proceeds thereof, after deducting the costs and expenses in

the manner decreed by the Circuit Court, as follows, to wit: William Winters is entitled to an undivided thirteenth interest in the property described in plaintiff's complaint; Mary Elizabeth Rose, William Henry Ellsberry, Obediah Benjamin Ellsberry, Mahulda Ann Fiscus and Thomas Jefferson Ellsberry are each entitled to an undivided seventy-eighth interest in the property, and Dora Sanford, Rose Veatch, Melissa Dove, William Ellsberry, Leonard Ellsberry, Edward Ellsberry, Martha Ellsberry, Josie Ellsberry and Elsie Ditman are each entitled to an undivided seven hundred and second interest in said property. The interest of the respondents in the property or the proceeds thereof will be changed accordingly.

The costs and disbursements upon this appeal will be adjusted and paid in the same proportion and manner as the costs and expenses were decreed in the trial court.        MODIFIED.  REHEARING DENIED.

BURNETT, C. J., and BROWN and HARRIS, JJ., concur.